IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SONYA R. MORTON,

                Plaintiff,

    v.

LANCASTER COUNTY PRISON, et al.,

              Defendants.

CIVIL ACTION
NO. 13-1306

## OPINION

**Slomsky, J.**                                          **August 8, 2014**

### TABLE OF CONTENTS

I.   INTRODUCTION ......................................................................................................... 1

II.  BACKGROUND ........................................................................................................... 2

III. STANDARD OF REVIEW ........................................................................................... 5

IV. PLAINTIFF'S SECOND AMENDED COMPLAINT WILL BE DISMISSED
     BECAUSE SHE HAS FAILED TO ESTABLISH A PLAUSIBLE CLAIM
     FOR RELIEF ................................................................................................................. 6

   A.  Plaintiff's Claims Against the Municipal Defendants Will Be Dismissed
       Because Plaintiff Has Failed to Establish Municipal Liability or
       Racial Discrimination ............................................................................................ 7

     1.  Plaintiff Has Failed to Establish Municipal Liability ..................................... 7

     2.  Plaintiff Has Failed to Establish Racial Discrimination ................................ 10

   B.  Plaintiff's Claims against Defendants Gerace and Arnold Will Be Dismissed
       Because Plaintiff Has Failed to Establish a Violation of Her Constitutional
       Rights or a Conspiracy to Violate Her Constitutional Rights ............................. 14

     1.  Plaintiff Has Failed to Establish the Existence of a Conspiracy ................... 14

     2.  Plaintiff Has Failed to Establish an Actionable Fourteenth Amendment
        Privacy Right ................................................................................................. 16

3.  Plaintiff Has Failed to Establish an Unlawful Search in Violation of the Fourth Amendment ........................................................................................ 18

4.  The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's State Law Claim.......................................................................................... 19

C.  CONCLUSION ............................................................................................ 19

## I.      INTRODUCTION

For twenty-one years, Plaintiff Sonya R. Morton ("Plaintiff") was employed as a guard in the Lancaster County Prison ("LCP" or "the Prison").  (Doc. No. 29 at ¶¶ 14, 15.)  The Prison is owned and operated by Defendant Lancaster County.  Plaintiff's immediate supervisor was Defendant Deputy Warden Kenneth Arnold ("Deputy Warden Arnold" or "Arnold").

Outside of work, Plaintiff was socially acquainted with Sonia Bair.  (Id. at ¶ 74.)  Bair's son was incarcerated in LCP on suspicion of murder.  (Id. at ¶ 79.)  Bair called Plaintiff a few times and asked how her son was doing.  (Id. at ¶¶ 80-81.)  Once, Bair inquired as to why her son was in protective housing.  (Id. at ¶ 83.)  Plaintiff told her that she would call another LCP employee and speak to him about it.  (Id. at ¶ 84.)  On another occasion, Plaintiff asked Bair if she had any messages for her son, and Bair asked Plaintiff to tell him that Bair loved him, which Plaintiff agreed to do.  (Id. at ¶ 94.)  Unbeknownst to the two women, Bair's phone had been tapped by Defendant Lancaster City Police Department in an effort to obtain more evidence about her son's alleged criminal activity.  The wiretap was conducted pursuant to a lawful court order.  Defendant Michael Gerace ("Gerace" or "Detective Gerace"), a detective with the police department, monitored the calls.  After hearing the conversations between Bair and Plaintiff, Detective Gerace turned the intercepted recordings over to Deputy Warden Arnold.

Pursuant to the Prison's employee rules, all guards must disclose personal relationships with inmates, and cannot receive telephone calls from a member of an inmate's family.  (Doc. No. 49-4 at 2, 3.)  In addition, the Prison has an employee code of ethics that prohibits employees from becoming involved in the lives of inmates and their families.  (Doc. No. 49-2 at 1.)  After receiving the recorded conversations between Plaintiff and Bair, Deputy Warden Arnold suspended Plaintiff with pay.  Following a hearing, Lancaster County fired Plaintiff for breaching the aforementioned rules.

1

On March 12, 2013, Plaintiff filed a Complaint in this Court against Detective Gerace, Deputy Warden Arnold, Lancaster County, and Lancaster City (together, "Defendants").  (Doc. No. 1.)  In her Complaint, she alleges a number of constitutional violations and a violation of the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. C.S.A. § 5701, et seq, based on the intercepted phone calls and Detective Gerace's subsequent disclosure to Arnold. (Id.)  Plaintiff has amended her Complaint twice, and before the Court are Defendants' Motions to Dismiss Plaintiff's Second Amended Complaint.  (Doc. Nos. 31, 32.)  For the reasons that follow, the Court will grant Defendants' Motions.

## II.    BACKGROUND[1]

Plaintiff has been employed by the LCP as a guard for twenty-one years, and held the position of Sergeant for the last five years.  (Doc. No. 29 at ¶¶ 14, 15.)  In March 2011, Kenneth Arnold was appointed Deputy Warden of the prison.  (Id. at ¶ 16.)  In her pleadings, Plaintiff details a number of disputes between herself and Arnold.  On one occasion, Arnold accused Plaintiff of not reporting a familial relationship with an inmate.  (Id. at ¶ 22.)  Arnold later discovered, however, that Plaintiff had in fact reported the relationship.[2]  (Id. at ¶ 27.)  On another occasion, after giving Plaintiff a mediocre performance review, Arnold refused to shake Plaintiff's hand.  (Id. at ¶¶ 46, 48, 51, 52.)

On April 17, 2012, Plaintiff was called into Arnold's office where he and Detective Gerace were waiting for her.  Detective Gerace handed Plaintiff a letter, stating that attempts to deliver it had failed.  (Id. at ¶ 57-60.)  Plaintiff opened the letter and found an inventory from the

---

[1]  Pursuant to the Motion to Dismiss standard, the Court has construed all facts "in the light favorable to the plaintiff."  Mayer v. Belichick, 605 F.3d 223, 229 (3d Cir. 2010).

[2]  Plaintiff was an inmate's former foster mother, and had reported this fact to Lancaster County upon her foster son's arrival at the prison.  (Id. at ¶¶ 19, 27.)

Lancaster County's District Attorney's Office for the Order authorizing the interception of wire communications.  (<u>Id.</u> at ¶ 63.)  The letter stated:

> Pursuant to the requirements of Section 5716(a) of the Wiretapping and Electronic Surveillance Control Act, 18 Pa. C.C. 5716(a), notice is hereby given that:  An Order authorizing the interception of wire communications to and from the telephone facility bearing number [redacted] subscribed to Sade Rudolph and utilized by Sonia Bair, was entered by the PA Superior Court on September 21, 2011 for a period of thirty days.  Pursuant to the Order, wire communications were intercepted during the period from September 22, 2011 through October 2, 2011.  Enclosed [sic] inventory is being sent to you pursuant to the requirements of Section 5716(a).

(<u>Id.</u> at ¶ 64.)  After Plaintiff read the letter, Detective Gerace told her "that if it were up to him, [Plaintiff] would be fired on the spot."  (<u>Id.</u> at ¶ 65.)  The detective then left the prison.  (<u>Id.</u> at ¶ 67.)  Arnold informed Plaintiff that she was suspended with pay pending an investigation.  (<u>Id.</u>)  Apparently, Detective Gerace gave Arnold a recorded copy of the conversations between Bair and Plaintiff, because when Plaintiff later called to check on the status of the investigation, she was told that Arnold needed time to "listen to the tapes."  (<u>Id.</u> at ¶¶ 70-72.)

On May 15, 2012, Lancaster County convened a departmental disciplinary hearing board to consider the charges that Plaintiff violated the LCP Employee Manual and the LCP's Code of Ethics.  (<u>Id.</u> at ¶ 90-92.)  Neither party has submitted allegations as to what took place during this hearing.  On May 22, 2012, Plaintiff received a document titled "Results of Departmental Disciplinary Hearing."  (<u>Id.</u> at ¶ 92.)  The document stated, in relevant part:

> As a result of an investigation, it has been determined that you interacted telephonically with an ex-inmate (currently an inmate at LCP) and mother of two inmates confined at LCP.  The telephone call was received at [redacted], a number traced to you.  During that conversation, the caller requested that you pass a message to one of her sons and you agreed to same.  Additionally, other evidence substantiates your interaction with this individual(s).  There is no evidence that your contact was reported to any

Supervisor nor is there any evidence of such reporting any relationship with this individual(s) prior to employment. Such conduct is in violation of Article 3.1(c), 3.4 and 3.8 of the LCP Employee Manuel [sic], as well as Article 11 of the LCP Code of Ethics.

(Id.) Thereafter, Plaintiff was terminated from her position. In the LCP Employee Manual, the above-referenced articles provide the following:

3.1(c) All pre-employment personal relationships or pre-incarceration relationships must be immediately reported to the employee=s [sic] supervisor in writing.

3.4 Personal favors, gifts, telephone calls, written correspondence, or any types of special consideration are not permitted to be accepted by or given to any employee, to or from an inmate, an inmate=s [sic] family, or an inmate=s [sic] friend.

3.8 All employees will refrain from any activity or association that may place themselves in a compromising position, jeopardizing the security of the institution and reflecting poorly upon themselves or the prison institution and/or fellow staff.

(Doc. No. 49-4 at 2, 3.) In addition, Article 11 of the LCP Code of Ethics states:

I will be ever vigilant to not become involved in the lives of the inmates and their families, and will remain objective in the performance of duty while acting in my official capacity.

(Doc. No. 49-2 at 1.)

On March 12, 2013, Plaintiff filed a Complaint in this Court alleging a number of constitutional violations against Defendants based on the intercepted phone calls and Detective Gerace's subsequent disclosure to Arnold. (Doc. No. 1.) Plaintiff subsequently filed an Amended Complaint (Doc. No. 15) and Defendants filed Motions to Dismiss (Doc. Nos. 17, 18.) On September 4, 2013, the Court held oral argument on the Motions, and allowed Plaintiff thirty days to amend her Amended Complaint once again. (Doc. No. 26.)

4

On October 7, 2013, Plaintiff filed the now operative pleading, her Second Amended Complaint.  (Doc. No. 29.)  On October 21 and 25, 2013, Defendants filed Motions to Dismiss. (Doc. Nos. 31, 32.)  On November 27, 2013, Plaintiff filed Responses to both Motions.  (Doc. Nos. 36, 37.)  On March 27, 2014, the Court held a hearing on the Motions, and allowed the parties thirty days to file supplemental briefs, which they did.  (Doc. Nos. 44, 47, 48 and 49.) The Motions are now ripe for disposition.[3]

## III.    STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 663; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, 231 n.14 (3d Cir. 2013) (citing Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n.27 (3d Cir. 2010)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no

---

[3]  In reviewing these Motions, the Court has considered the Second Amended Complaint (Doc. No. 29), Defendants' Motions to Dismiss (Doc. Nos. 31, 32), Plaintiff's Responses (Doc. Nos. 36, 37), the arguments of counsel during the March 27, 2014 hearing, and all supplemental briefing. (Doc. Nos. 44, 47, 48, and 49.)

more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679).  "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679.  The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

## IV.   PLAINTIFF'S SECOND AMENDED COMPLAINT WILL BE DISMISSED BECAUSE SHE HAS FAILED TO ESTABLISH A PLAUSIBLE CLAIM FOR RELIEF

Plaintiff's Second Amended Complaint contains eleven causes of action against Defendants.  (Doc. No. 29 at ¶¶ 99-167.)  For the sake of clarity, the Court will first examine all claims against Lancaster City and Lancaster County (together, "the Municipal Defendants").  Then, the Court will examine the claims against the individual Defendants, Detective Gerace and Deputy Warden Arnold.

### A.    Plaintiff's Claims Against the Municipal Defendants Will Be Dismissed Because Plaintiff Has Failed to Establish Municipal Liability or Racial Discrimination

Plaintiff has alleged six constitutional violations against the Municipal Defendants.  Five counts arise under 42 U.S.C. § 1983 ("Section 1983") and one count, brought only against Lancaster County, arises under 42 U.S.C. § 1981 ("Section 1981").  The Court will examine the Section 1983 claims before proceeding to the Section 1981 claim against Lancaster County.

### 1.    Plaintiff Has Failed to Establish Municipal Liability

Plaintiff asserts a total of five claims against the Municipal Defendants pursuant to 42 U.S.C. § 1983.  (Doc. No. 29 at ¶¶ 114–40.)  While not conferring a substantive right, 42 U.S.C. § 1983 serves as a vehicle by which other federal rights may be vindicated.  Baker v. McCollan, 443 U.S. 137, n.3 (1979).  The statute provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State. . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.  Accordingly, individuals may recover under Section 1983 for deprivations of rights granted by the United States Constitution.  Chainey v. Street, 523 F.3d 200, 218 (3d Cir. 2008).  Here, Plaintiff alleges that Municipal Defendants violated her right to privacy as protected by the Fourteenth Amendment (Counts IV and VII), her right to be free from unlawful search pursuant to the Fourth Amendment (Counts III and VI), and her procedural due process rights under the Fourteenth Amendment (Count V).

Municipalities, although within the reach of Section 1983, may only be held liable if a plaintiff proves the existence of an unconstitutional municipal policy or custom.  Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694–95 (1978).  A municipal "policy is made

7

when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583–84 (3d Cir. 2003). The Supreme Court also has held that in the absence of a formal policy enacted by a decisionmaker, "an unconstitutional governmental policy [can] be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business." City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988) (citing Owen v. City of Independence, 446 U.S. 993 (1980); Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981)).

A "custom is an act that has not been formally approved by an appropriate decisionmaker, but that is so widespread as to have the force of law." Natale, 318 F.3d at 583–84. To establish a municipal liability claim, a plaintiff "must identify a custom or policy, and specify what exactly that custom or policy was." Id. at 658. Here, Plaintiff has not pled "sufficient factual matter" to establish the existence of an unconstitutional municipal policy or custom as to either of the Municipal Defendants. Ethypharm S.A. France, 707 F.3d 223, 231 n.14 (3d Cir. 2013).

### a. Plaintiff Has Failed to Establish a Municipal Policy or Custom That Violated Her Fourth or Fourteenth Amendment Privacy Rights

First, in a cursory fashion, Plaintiff argues that her Fourth and Fourteenth Amendment privacy rights were violated when: 1) Lancaster City unlawfully obtained a recording of her private conversations, and 2) Lancaster County knowingly used the unlawfully obtained information to fire her. Neither of these arguments supports the contention "that anyone in city [or county] government ever promulgated, or even articulated, [an unconstitutional policy]" that deprived Plaintiff of her privacy rights under the Fourth or Fourteenth Amendments. Praprotnik, 485 U.S. at 128. Plaintiff discusses the individual actions of municipal employees Gerace and

Arnold, but fails to discuss the actions of "those whom the law established as the makers of municipal policy in the matters of personnel administration." Id. Indeed, beyond bald allegations, Plaintiff has not even argued the existence of a formal policy or custom adopted by the Municipal Defendants.[4] Accordingly, her Fourth and Fourteenth Amendment claims against the Municipal Defendants must fail.

### b. Plaintiff Has Failed to Establish a Municipal Policy or Custom That Violated Her Procedural Due Process Rights

Second, Plaintiff baldly asserts that Lancaster County's decision to fire her was a violation of her procedural due process rights under the Fourteenth Amendment. To state a procedural due process claim, a plaintiff must allege that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law." Iles v. de Jongh, 638 F.3d 169, 173 (3d Cir. 2011) (quoting Biliski v. Red Clay Consol. School Dist. Bd. of Educ., 574 F.3d 214, 219 (3d Cir. 2009)).

Again, Plaintiff has failed to establish the existence of a municipal policy or custom designed to deprive employees of their procedural due process rights. To the contrary, in her Second Amended Complaint, Plaintiff details her post-suspension hearing, where evidence was presented to a neutral commission. (Doc. No. 29 at ¶¶ 90-96.) This proceeding indicates that Lancaster County implemented a policy of conducting pre-termination hearings, safeguarding

---

[4] Although not argued by Plaintiff, the Court has considered the possibility that the "single actions" taken by Detective Gerace and Deputy Warden Arnold may have bound the Municipal Defendants to a "policy" of passing wiretapped communications between municipal departments for personnel reasons. However, neither of these individuals qualify as the "highest official responsible for setting policy" in the area of personnel administration or interdepartmental relations, and therefore their single actions cannot bind the Municipal Defendants.

employee due process rights. [5]

Under Section 1983, a municipal entity is liable only if a municipal policy or custom caused a plaintiff to be deprived of a federal right.  See, e.g., Los Angeles County, Cal. v. Humphries, —— U.S. ——, ——, 131 S.Ct. 447, 450, 178 L.Ed.2d 460 (2010).  Because Plaintiff has failed to plausibly allege a violation of her constitutional rights caused by a municipal custom or policy, Counts III, IV, V, VI and VII of the Second Amended Complaint must be dismissed.

### 2.    Plaintiff Has Failed to Establish Racial Discrimination

In Count X, Plaintiff alleges a claim of race discrimination against her former employer, Lancaster County, under 42 U.S.C. § 1981.  Section 1981 provides as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

*    *    *

---

[5]   In addition to not articulating an unconstitutional policy or custom, Plaintiff has also failed to articulate a protected property right in her continued employment, a threshold issue in establishing a claim for procedural due process.  "The question of whether an employee has a property right in continued employment is a question of state law." Iles, 638 at 173 (quoting McDaniels v. Flick, 59 F.3d 446, 458 (3d Cir.1995)).  Under Pennsylvania law, a "public employee takes his job subject to the possibility of summary removal by the employing authority.  He is essentially an employee-at-will." Scott v. Phila. Parking Auth., 166 A. 2d 278, 280 (Pa. 1960).  An at-will employee "may be terminated at any time, for any reason or for no reason." Pipkin v. Pennsylvania State Police, 693 A.2d 190, 191 (Pa. 1977).  To overcome the presumption of at-will employment in Pennsylvania, a public employee must establish the existence of either an express contract, an implied-in-fact contract and additional consideration, or an applicable recognized public policy exception.  Rapagnani v. Judas Co., 736 A.2d 666, 669 (Pa. Super. Ct. 1999).  Plaintiff has failed to establish an exception to Pennsylvania's general at-will employment status, and therefore she has not established that she was entitled to a hearing under the Due Process Clause, even though she was afforded one.

> The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981.  "The elements of a Section 1981 claim are generally identical to the elements of an employment discrimination case under Title VII [of the Civil Rights Act of 1964]."[6] Reyes v. Autozone, Inc., No. 08-847, 2009 WL 4559454, *5 (W.D. Pa. Dec. 2, 2009) (citing Brown v. J. Kaz, Inc., 581 F.3d 175, 182 (3d Cir. 2009)).

Like Title VII claims of race discrimination, claims of race discrimination pursuant to Section 1981 are examined under the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).[7]  Under this analysis, the plaintiff "must carry the initial burden under the statute of establishing a prima facie case of . . . discrimination."  Id. at 802.  If Plaintiff establishes a prima facie case, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection."  Id.  If the employer is able to provide such a reason, the burden shifts back to the plaintiff to produce "sufficient evidence to raise a genuine issue of fact as to whether the employer's proffered reasons were not its true reasons for the challenged employment action."  Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1067 (3d Cir. 1996).  "At all times, however, the

---

[6] Title VII provides, in pertinent part:  "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . race . . . ."  42 U.S.C. § 2000e-2(a)(1).

[7] There is no direct evidence of discrimination in this case.  Therefore, the burden-shifting analysis set forth in McDonnell Douglas applies.  See Fasold v. Justice, 409 F.3d 178, 184 (3d Cir. 2005) (holding that a plaintiff may establish employment discrimination by either "(1) presenting direct evidence of discrimination or (2) by presenting indirect evidence of discrimination that satisfies the familiar three-step framework of McDonnell Douglas.") (internal citations omitted.).

burden of persuasion rests with the plaintiff." Smith v. City of Allentown, 589 F.3d 684, 689-90 (3d Cir. 2009).

To make out a prima facie case of race discrimination in this case, Plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for the position she sought to retain; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008) (citing McDonnell Douglas, 411 U.S. at 802; Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1066 n. 5 (3d Cir.1996) (en banc)). A prima facie case of employment discrimination is a low bar for plaintiffs. See Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ., 470 F.3d 535, 539 (3d Cir. 2006) ("[T]here is a low bar for establishing a prima facie case of employment discrimination.") (citing Ezold v. Wolf, 983 F.2d 509, 523 (3d Cir.1993) ("In Title VII cases involving a dispute over subjective qualifications, we have recognized that the qualification issue should often be resolved in the second and third stages of the McDonnell Douglas . . . analysis, to avoid putting too onerous a burden on the plaintiff in establishing a prima facie case. . . . Because the prima facie case is easily made out, it is rarely the focus of the ultimate disagreement.") (internal citations and quotation marks omitted)).

Viewing the facts in the light most favorable to Plaintiff, she has established a prima facie case of discrimination. As an African-American, she is a member of a protected class. With twenty-one years of experience in the position, she was qualified. Her termination was as an adverse employment action. Finally, she was the only African American supervisor. Accordingly, her termination could give rise to an inference of intentional discrimination. See Fortes v. Boyertown Area Sch. Dist., No. 12-6063, 2014 WL 3573104 *9 (E.D. Pa. July 18,

2014) (Finding a possible inference of intentional discrimination where the plaintiff, one of two African–Americans employed by a school district, was restricted in speaking with parents, offered a separation agreement, and ultimately reassigned.)

However, Plaintiff cannot overcome the next stages of the <u>McDonnell Douglas</u> analysis, and therefore her racial discrimination claim fails.  Defendant Lancaster County has produced evidence of a legitimate, non-discriminatory reason for Plaintiff's termination, namely that she was found to have breached the following provisions of the LCP Employee Manual and the LCP Code of Ethics:

> 3.1(c)  All pre-employment personal relationships or pre-incarceration relationships must be immediately reported to the employee=s [sic] supervisor in writing.
>
> 3.4  Personal favors, gifts, telephone calls, written correspondence, or any types of special consideration are not permitted to be accepted by or given to any employee, to or from an inmate, an inmate=s [sic] family, or an inmate=s [sic] friend.
>
> 3.8  All employees will refrain from any activity or association that may place themselves in a compromising position, jeopardizing the security of the institution and reflecting poorly upon themselves or the prison institution and/or fellow staff.
>
> I will be ever vigilant to not become involved in the lives of the inmates and their families, and will remain objective in the performance of duty while acting in my official capacity.

(Doc. Nos. 49-4 at 2, 3; 49-2 at 1.)

Plaintiff was given this explanation for her termination following her hearing.  She has not presented any evidence to show that this legitimate, non-discriminatory reason for her termination was pretextual.  Indeed, in her Response to Lancaster County's Motion to Dismiss, Plaintiff argues that she has established a prima facie case of employment discrimination, but offers no argument in response to Lancaster County's proffered legitimate reasons for its actions.

13

(Doc. No. 37 at 14-15.)  In her Second Amended Complaint, Plaintiff merely states that she "was discriminated against by Defendants because she is an African-American and treated differently than her white colleagues."  (Doc. No. 29 at ¶ 156.)  This statement is not enough to establish pretext.  DeMary v. Kennedy Health Sys., No.11-05984, 2014 WL 3748591, *9 (D.N.J. July 30, 2014) ("[A] plaintiff's subjective belief or feeling that she was the victim of disparate treatment is insufficient, standing alone, to preclude judgment as a matter of law.") (citing Jones v. Sch. Dist. of Philadelphia, 19 F. Supp. 2d 414, 420 (E.D. Pa. 1998) aff'd, 198 F.3d 403 (3d Cir. 1999); Ekhato v. Rite Aid Corp., 529 F. App'x 152, 156 (3d Cir. 2013) ("[Plaintiff's] subjective belief that the decision to terminate her employment was discriminatory is insufficient.") (internal quotations omitted.)  Accordingly, Plaintiff's claim of race discrimination against Lancaster County is without merit, and Count X will be dismissed.

### B. Plaintiff's Claims against Defendants Gerace and Arnold Will Be Dismissed Because Plaintiff Has Failed to Establish a Violation of Her Constitutional Rights or a Conspiracy to Violate Her Constitutional Rights

As against Defendants Gerace and Arnold, Plaintiff has alleged a claim of conspiracy under 42 U.S.C. § 1985(3) and a claim of neglect to prevent a conspiracy under 42 U.S.C. § 1986.  Additionally, Plaintiff has asserted three claims against Defendant Gerace arising under the Fourteenth Amendment, the Fourth Amendment, and the Pennsylvania Wiretapping and Electronic Surveillance Control Act.  The Court will examine the conspiracy claims first, and then address the individual claims against Detective Gerace.

### 1. Plaintiff Has Failed to Establish the Existence of a Conspiracy

In Counts VIII and IX of her Complaint, Plaintiff alleges that Defendants Gerace and Arnold conspired together to deprive her of her constitutional rights in violation of 42 U.S.C. § 1985(3) (Count VIII), and that the pair negligently prevented the commission of the conspiracy

in violation of 42 U.S.C. § 1986 (Count IX).  However, because Plaintiff has failed to establish the existence of a conspiracy, both counts will be dismissed.

Pursuant to 42 U.S.C. § 1985(c):

> [i]f two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(c).

A claim for conspiracy under Section 1985(c) must establish: 1) the existence of a conspiracy; and 2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 (1970).  A plaintiff "must show a combination of two or more persons to do a criminal act, or to do a lawful act by unlawful means or for an unlawful purpose."  Marchese v. Umstead, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000).  In the complaint, a plaintiff "must make specific factual allegations of combination, agreement or understanding among all or between any of the defendants to plot, plan or conspire to carry out the alleged chain of events."  Marchese, 110 F. Supp. at 371.

Here, Plaintiff merely contends that "at all times relevant herein, there was a conspiracy between Gerace and Arnold to violate Plaintiff's constitutional rights in an effort to terminate her employment" and that "Gerace's unlawful disclosure of the wiretap contents and Arnold's subsequent termination of Plaintiff were acts committed in furtherance of the conspiracy."  (Doc. No. 29 at ¶¶ 142-43.)  These allegations, without any supporting facts, are not enough to establish an "agreement or understanding" among Defendants Gerace and Arnold "to plot, plan or conspire to carry out the alleged chain of events."  Marchese, 110 F. Supp. at 371.  Plaintiff does not assert that Arnold, as Deputy Warden, was involved in obtaining the Court Order

15

authorizing the interception of the wire communications.  Plaintiff does not assert that Detective

Gerace was involved in the decision-making process that led to Plaintiff's termination.  As

Lancaster County asserts in its Motion to Dismiss, Plaintiff "simply presumes that because she

was fired as a result of information provided by Gerace to Arnold, the two must have necessarily

conspired to illegally terminate her employment."  (Doc. No. 31-1 at 17.)  The Court agrees with

Lancaster County's assessment.  Plaintiff's conclusory statements are not "specific factual

allegations" of an agreement between Gerace and Arnold.  <u>Marchese</u>, 110 F. Supp. at 371.

Because Plaintiff has failed to successfully plead a conspiracy under Section 1985(c), her

conspiracy claims must fail.[8]  Counts VIII and IX will be dismissed.

### 2.    Plaintiff Has Failed to Establish an Actionable Fourteenth Amendment Privacy Right

In Count I of her Second Amended Complaint, Plaintiff asserts a violation of her

Fourteenth Amendment right to privacy against Defendant Gerace.  To support her argument,

Plaintiff cursorily contends that Gerace is liable because he violated clearly established law when

he "willfully disclosed th[e] [wiretap] information for the purpose of depriving Plaintiff of her

constitutional right to privacy protected by the Fourteenth Amendment to the United States

Constitution."  (Doc. No. 29 at ¶ 101.)

The Fourteenth Amendment right to privacy shields individuals "from unwarranted

governmental intrusions into their personal lives." <u>Eagle v. Morgan,</u> 88 F.3d 620, 625 (8th Cir.

1996) (citing <u>Whalen v. Roe,</u> 429 U.S. 589, 598 n. 23 (1977)).  Traditionally, the Fourteenth

---

[8] As Plaintiff admits, "[a] claim [for neglect to prevent a conspiracy] under Section 1986 is necessarily dependent upon a valid [conspiracy] claim under Section 1985."  (Doc. No. 37 at 14.)  Because both of her claims require the element of conspiracy, and Plaintiff cannot establish the existence of a conspiracy, both claims must fail.

Amendment has protected two categories of privacy rights.  These two categories were described

by the Third Circuit as follows:

> This first type of privacy right is the right recognized in Justice
> Brandeis's [sic] dissent in <u>Olmstead v. United States</u>, "the right to
> be let alone." The right not to have intimate facts concerning one's
> life disclosed without one's consent" is a venerable right whose
> constitutional significance we have recognized in the past.   In
> determining whether information is entitled to privacy protection,
> we have looked at whether it is within an individual's reasonable
> expectations of confidentiality. The more intimate or personal the
> information, the more justified is the expectation that it will not be
> subject to public scrutiny.  We have deemed the following types of
> information to be protected: a private employee's medical
> information when sought by the government; medical, financial
> and behavioral information relevant to a police investigator's
> ability to work in dangerous and stressful situations; a public
> employee's medical prescription record; a minor student's
> pregnancy status; sexual orientation; and an inmate's HIV-positive
> status. This information consists of three categories: sexual
> information, medical information, and some financial information.
> While this is not an exhaustive list, it is clear that the privacy right
> is limited to facts and an individual's interest in not disclosing
> those facts about himself or herself. It is the right to refrain from
> sharing intimate facts about oneself.
>
> The second type of privacy right is the right to autonomy and
> independence in personal decision-making. Cases in this category
> describe the liberty interests in matters relating to marriage,
> procreation, contraception, family relationships, and parental child
> rearing and education decisions.

<u>Malleus v. George</u>, 641 F.3d 560, 564-65 (3d Cir. 2011) (internal citations omitted).  Here,

Plaintiff has not articulated which category her claim falls under.  However, because her

intercepted conversations with Bair do not relate to her "autonomy and independence in personal

decision-making," the Court will assume that Plaintiff is pursuing the first category of privacy

protections.  <u>Id.</u> at 565.

The expectation that one's telephone conversations are not being recorded and

subsequently turned over to their employer would seem to be "within an individual's reasonable

expectations of confidentiality." Id. However, the protections of the Fourteenth Amendment are limited to more intimate disclosures. Indeed, the Third Circuit has held that the Fourteenth Amendment:

> protects against public disclosure only [of] highly personal matters representing the most intimate aspect of human affairs. Indeed, the constitutional right of privacy, which courts have been reluctant to expand, shields from public scrutiny only that information which involves deeply rooted notions of fundamental personal interests derived from the Constitution. In this respect, the federal right of privacy is significantly narrower than the right of privacy protected by state tort law.

Nunez v. Pachman, 578 F.3d 228, 232 (3d Cir. 2009). Although Plaintiff may have had an expectation of confidentiality in her conversations with Bair, the conversations did not concern Plaintiff's intimate or highly personal matters—they concerned Bair's son and his conditions of prison confinement. The fact that Plaintiff was engaged in conversation with Bair is not an intimate or highly personal matter concerning Plaintiff. Because Plaintiff has failed to allege the disclosure of highly personal matters, Count I will be dismissed.

### 3. Plaintiff Has Failed to Establish an Unlawful Search in Violation of the Fourth Amendment

In Count II, Plaintiff alleges that Gerace conducted an illegal search and seizure in violation of the Fourth Amendment. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. That right "shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Id.

Here, Gerace obtained a court order to wiretap Bair's phone in order to investigate Bair's son. Plaintiff does not argue that the court order was unlawfully obtained. Because Bair and Plaintiff were discussing Bair's son, Gerace's interception of their conversation was lawful.

Because the search at issue here was in accordance with a lawful court order, the search did not violate the Fourth Amendment and Plaintiff's claim must fail.[9]

### 4.    The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's State Law Claim

Plaintiff's last remaining claim against Detective Gerace is for a violation of the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. C.S.A. § 5701, et seq. (Doc. No. 29 at ¶¶ 158-67.)  However, the Court need not address the merits of this claim. Because the Court is dismissing all of Plaintiff's federal claims, it will decline to exercise supplemental jurisdiction over this remaining state law claim.  See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction").  Thus, Count XI of the Second Amended Complaint will be dismissed as well.

### C.    CONCLUSION

For the foregoing reasons, the Defendants' Motions to Dismiss (Doc. Nos. 31, 32), will be granted and Plaintiff's Second Amended Complaint will be dismissed.

An appropriate Order follows.

---

[9]  Additionally, it appears that Plaintiff's harm stems not from the monitoring of the conversation, but from Gerace's subsequent disclosure to Arnold.  The Fourth Amendment, however, protects citizens only from unlawful "searches," not from subsequent disclosure of information based on lawful searches.